7/31/2026 12:06 PM
26CV40679

=

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| STEPHANIE HAYS GABRIEL,<br>Plaintiff,<br>v.<br>U.S. GREEN BUILDING COUNCIL, INC., a nonprofit corporation,<br>Defendant. | Case No.<br>**COMPLAINT**<br>(whistleblower discrimination (ORS 659A.199, ORS 659A.030(1)(g), ORS 659A.109), Paid Leave Oregon discrimination (ORS 657B.060, ORS 657B.070, ORS 659A.370), Oregon Workplace Fairness Act violations (ORS 659A.370, ORS 659A.030(1)(h), disability discrimination (ORS 659A.112))<br>Claims Not Subject to Mandatory Arbitration<br>**REQUEST FOR JURY TRIAL**<br>Prayer: $600,000<br>Filing fee: $594 per ORS 21.160(1)(c) |



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

For her complaint against defendant U.S. Green Building Council, Inc., plaintiff Stephanie Hays Gabriel alleges:

## INTRODUCTION

**1.**

This case concerns a worker who made good faith reports to her employer, a corporation with hundreds of employees and global reach, about how anti-disability bias illegally corrodes its employee evaluation process. Relatedly, she complained about her supervisor engaging in disability discrimination and urged improvements in accessibility. Instead of taking these concerns seriously, defendant U.S. Green Building Council, Inc. tried to silence the worker, plaintiff Stephanie Hays Gabriel. USGBC terminated Gabriel's employment the day she returned from protected leave, and then pressured her to sign a severance agreement with nondisparagement and nondisclosure provisions prohibited by Oregon's Workplace Fairness Act. Oregon's Bureau of Labor and Industries (BOLI) found substantial evidence of whistleblower discrimination and violations of the Workplace Fairness Act. Gabriel seeks justice for Defendant's misconduct.

## PARTIES, JURISDICTION, AND VENUE

**2.**

Plaintiff Stephanie Hays Gabriel is a resident of Multnomah County, Oregon.

**3.**

Defendant U.S. Green Building Council, Inc. ("USGBC") is a nonprofit public benefit corporation incorporated in Washington, D.C. where it also has its principal place of business. USGBC certifies buildings, products, and other entities under its Leadership in Energy and Environmental Design ("LEED") framework, which USGBC asserts is the most widely used green building rating system in the world.



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

**4.**

USGBC consistently and extensively solicits and conducts business in Oregon. Among other things, there are approximately 55 USGBC members in Oregon, and over 1,330 Oregon buildings – including the Multnomah County courthouse – that are LEED-certified by USGBC. Through its LEED for Cities program, USGBC has certified the Oregon cities of Portland and Beaverton. The individual USGBC hired to fill Gabriel's role after her termination is an Oregon resident, and part of Gabriel's job was representing USGBC's interests in Oregon.

**5.**

This Court has jurisdiction under ORS 14.030.

**6.**

Venue is appropriate in Multnomah County because it is where the causes of action arose, ORS 14.080(1), and because USGBC conducts regular, sustained business activity in this county, ORS 14.080(2).

## FACTUAL BACKGROUND

**7.**

On September 19, 2022, USGBC hired Gabriel as Regional Director for the Pacific region. In this role, Gabriel promoted LEED and USGBC membership in California, Washington, Oregon, and Hawaii.

**8.**

Gabriel worked remotely. Gabriel participated in video meetings, phone conferences, and conducted all other regular professional duties for USGBC from her home in Multnomah County except for specific conferences or meetings that required travel.

**9.**

Around February 1, 2023, Gabriel learned she needed to take leave and use sick time for a medical procedure, a meniscus repair surgery for a knee condition. The condition resulted from



FOX LAW LLC
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

a physical injury Gabriel sustained in the course of her work for USGBC the previous November.

**10.**

Gabriel informed USGBC's Human Resources Department as well as her supervisor, Managing Director Rhiannon Jacobsen, about her need for medical leave in or around February 8, 2023. Jacobsen informed Gabriel that she, Jacobsen, had only needed two days of leave for a similar medical procedure, implying that Gabriel should likewise limit her leave to two days.

**11.**

Gabriel returned to work two days after her procedure. She wanted and needed a longer period to recover, as the surgery resulted in Gabriel using braces and crutches and not being able to bear weight for 6-8 weeks. However, given Jacobsen's comments, Gabriel feared that Jacobsen would retaliate against her if she stayed out on leave longer. So she returned to work and decided to take things day by day.

**12.**

Following Gabriel's return to work, Jacobsen began treating her differently and in ways that Gabriel perceived as disability-based discrimination and or discrimination around the taking of medical leave. For example, Jacobsen baselessly accused Gabriel of lying related to the dates of the impairment that required the medical procedure for which Gabriel took leave.

**13.**

Other examples of conduct Gabriel, in good faith, believed constituted illegal disability discrimination and/or leave-related discrimination included:

- In early May 2023, Jacobsen confronted Gabriel about not hosting in-person events. Gabriel reminded Jacobsen that she had been, and was still, on crutches making it difficult for her to engage in such work.
- On July 19, 2023, Jacobsen told Gabriel she believed Gabriel's facial expression was disrespectful. Gabriel explained that she has a disability, a form of



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

neurodivergence that substantially limits her ability to regulate her facial expressions.

- After this incident, Jacobsen began describing Gabriel with reference to disability-related stereotypes common to people with neurodivergence. Jacobsen questioned Gabriel's memory, her ability to communicate, and her ability to be understood by her team.
- Jacobsen said in a team meeting, "I wish everyone thought like I do," implying that people whose impairments substantially limit certain thinking processes were not welcome on the team.
- In September or October 2023, Jacobsen said in a group meeting that she did not "want to meet people where they are." Gabriel understood this to mean Jacobsen did not want to accommodate colleagues' disabilities.

**14.**

Concerned for herself and other workers with actual or perceived disabilities, on October 5, 2023, Gabriel reported to USGBC's Human Resources Department that Jacobsen was harassing her because of her disability. Gabriel was connected to USGBC's ombuds.

**15.**

In December 2023, Jacobsen gave Gabriel a performance review with low numbers, which prevented her from receiving bonuses and performance-based pay increases.

**16.**

In Gabriel's view, disability discrimination pervaded the performance review. It was also retaliatory. Gabriel had achieved or exceeded all substantive work goals for 2023, despite being on crutches or braces for several months and working without staff most of the year. Yet, among other things, Jacobsen said that Gabriel "asks too many questions," which is a manifestation of her impairment, and scored Gabriel low on emotional intelligence. Gabriel understood the


FOX LAW LLC
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

emotional intelligence scores to reflect her disability-related limitations on her ability to regulate facial expressions. Relatedly, Jacobsen's review criticized Gabriel for failing to host in-person events during a period when Jacobsen knew Gabriel was not mobile and using crutches.

**17.**

Gabriel communicated to USGBC's Human Resources department in December 2023, and again in January 2024. She expressed her concerns about discrimination at USGBC, in particular regarding Jacobsen's harassment and retaliation and the unfair performance review.

**18.**

In February 2024, Gabriel elevated her concerns to USGBC's Chief Operations Officer Lisa Revitte. Gabriel emphasized the fear she felt in reporting to Human Resources and the impact Jacobsen's discrimination was having on her mental health. She made suggestions to improve processes to reduce individual biases.

**19.**

On September 26 and 27, 2024, Gabriel attended an internal USGBC retreat in Kansas City. At the retreat, Jacobsen told Gabriel's team they should be proud of the bonuses they received that year. Gabriel understood she was one of the only people who did not receive a bonus because of the discriminatory and performance review.

**20.**

Gabriel stepped out into the hall during the retreat because she had become emotional. As Gabriel sat on a bench outside of and away from the retreat's conference room, gathering herself, Jacobsen confronted her. Gabriel told Jacobsen she was upset because she did not believe withholding her bonus had been fair. Jacobsen encouraged Gabriel to leave the retreat.

**21.**

Gabriel asked Jacobsen if there would be negative consequences for leaving; Jacobsen told her there would not be.



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

**22.**

At first, Gabriel returned to the conference room and rejoined her group. Gabriel's team was directed to discuss the low engagement scores it had given USGBC in employee engagement surveys. This session was presented as an opportunity for USGBC employees to provide sincere and constructive feedback. When Gabriel joined, the individuals at the table to which she was assigned were already discussing annual review processes.

**23.**

In the discussion, Gabriel explained she believed USGBC handled performance reviews unfairly and there could be improvements to the process that would make them more fair. She discussed her impairment and the low performance review Jacobsen had given her. Gabriel explained her belief that there were not checks and balances at USGBC to protect workers with disabilities and this was an area where USGBC could improve. Gabriel also discussed with other staff improvements that could be made to make the workplace more accessible and inclusive.

**24.**

Gabriel left the retreat after that discussion, as Jacobsen had suggested.

**25.**

Later that day, September 27, 2024, Jacobsen informed Gabriel she was removing a major project from her workload, which involved professional travel the next week. The project involved two conferences, meetings with government agencies, a forum Gabriel had planned, and a tour of a local foundation's farm. Jacobsen cancelled Gabriel's flight and hotel reservations.

**26.**

Experiencing severe mental and physical symptoms of work-related stress, Gabriel took medical leave under Paid Leave Oregon.



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

**27.**

On October 4, 2024, Jacobsen emailed Gabriel, while she was out on leave. Jacobsen accused Gabriel of making "inappropriate remarks and disruptive actions" at the retreat. She wrongly accused Gabriel of lying down in the entrance to the retreat room and crying. Jacobsen stated, "We became aware that you were sharing openly with your breakout group about your disagreement with your performance rating and how you feel the performance review process was unfair[.]" Jacobsen concluded the email by stating, "we will discuss this further when you return [from leave]."

**28.**

There was no discussion of the retreat with Gabriel upon her return from leave. And USGBC never subsequently discussed with Gabriel the substance of her objections to USGBC's disability-related discrimination.

**29.**

Instead, USGBC terminated Gabriel's employment January 6, 2025, the same day she returned from protected leave.

**30.**

USGBC presented Gabriel with a Severance Agreement, which required her to agree to non-disparagement and confidentiality provisions as a condition of the severance payment.

**31.**

Through counsel, Gabriel tried to persuade USGBC to remove the non-disparagement and confidentiality provisions from the Severance Agreement, but USGBC refused.

**32.**

Desperate to move on from her experiences with USGBC and receive the proffered severance payment during an unexpected period of unemployment, Gabriel signed the Severance Agreement on March 26, 2025, noting in the Agreement that the confidentiality and non-disparagement provisions were required by USGBC, and that Gabriel had not requested them.



FOX LAW LLC
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

**33.**

That caveat was unacceptable to USGBC which refused to sign the Severance Agreement or comply with any of its terms including the severance payout, unless Gabriel removed the language noting USGBC insisted on the confidentiality and non-disparagement provisions.

**34.**

Gabriel timely filed an administrative complaint with BOLI on March 28, 2025. BOLI ultimately found substantial evidence that USGBC engaged in whistleblower discrimination and violations of the Workplace Fairness Act.

**35.**

Gabriel's BOLI complaint, in conjunction with the parties' subsequent tolling agreement, tolled the applicable statutes of limitations such that the instant complaint is timely.

**FIRST CLAIM FOR RELIEF**

(Whistleblower discrimination, ORS 659A.199, ORS 659A.030(1)(g), ORS 659A.109)

**36.**

Gabriel incorporates all preceding paragraphs.

**37.**

USGBC was at all relevant times an employer as defined by ORS 659A.001(4)(a) and 659A.001(9).

**38.**

While employed by USGBC, Gabriel lodged internal, good-faith reports of what she perceived as illegal disability discrimination against USGBC. Among other things, Gabriel:

- Repeatedly asserted that USGBC's performance review process did not provide sufficient guardrails to avoid disability-related animus impacting the review;



FOX LAW LLC
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

- accused her direct supervisor of disability-related stereotyping, harassment, and discriminatory evaluations; and
- discussed accessibility as an area where USGBC should improve.

**39.**

USGBC retaliated against Gabriel for her good-faith reporting of disability discrimination by, among other things:

- removing her from a planned work project in or around September 27, 2024;
- terminating her employment; and
- pressuring her to agree to an illegal severance agreement that would inhibit or bar Gabriel from publicly disclosing disability-related conduct by USGBC.

**40.**

As a result of USGBC's retaliation, Gabriel suffered lost wages, lost benefits, and emotional and psychological harm. She has consistently experienced depression, anxiety, nightmares and sleeplessness as a direct result of USGBC's retaliation. She has also experienced physical manifestations of this emotional harm including weight gain and heightened blood pressure.

**41.**

Heartbroken, gutted, and depressed by USGBC's retaliatory termination, and without a positive job reference from USGBC, Gabriel has struggled to secure alternative employment despite her best efforts applying for hundreds of jobs. Gabriel has had to secure a home equity line of credit to pay her living expenses, an additional financial loss resulting from USGBC's retaliation.

**42.**

In addition to damages, Gabriel is entitled to costs and attorney fees and statutory damages pursuant to ORS 20.107 and ORS 659A.885.



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

**SECOND CLAIM FOR RELIEF**

(Paid Leave Oregon retaliation, ORS 657B.060, ORS 657B.070(1))

**43.**

Gabriel incorporates all preceding paragraphs.

**44.**

Gabriel was an eligible employee under ORS 657B.010(12) who earned more than $1,000 in wages during the relevant base year.

**45.**

Gabriel's leave from work in fall of 2024 was "made necessary by [her] own serious health condition." ORS 657B.010(20).

**46.**

Pursuant to ORS 657B.060(1)(a), after returning to work after a period of family leave, medical leave or safe leave, an eligible employee is entitled to be restored to the position of employment held by the employee when the leave commenced, if that position still exists[.]" *See also* ORS 657B.070(1)(a)-(b).

**47.**

Gabriel's position still existed when she returned to work January 6, 2025.

**48.**

USGBC unlawfully denied Gabriel reinstatement, and instead unlawfully terminated Gabriel, for exercising her right to protected medical leave.

**49.**

In addition to damages described above, Gabriel is entitled to costs and attorney fees and statutory damages pursuant to ORS 20.107, ORS 657B.070(2)(a), and ORS 659A.885.



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

## THIRD CLAIM FOR RELIEF

(Workplace Fairness Act, ORS 659A.370, ORS 659A.030(1)(h))

**50.**

Gabriel incorporates all preceding paragraphs.

**51.**

Pursuant to ORS 659A.370(1)(a), employers may not enter into an agreement with a former or current employee that contains, as a condition for the receipt of benefits, “a nondisclosure provision, a nondisparagement provision or any other provision that has the purpose or effect of preventing the employee from disclosing or discussing conduct” that may constitute workplace discrimination, including but not limited to discrimination under ORS 659A.030 and ORS 659A.112.

**52.**

USGBC presented Gabriel with a severance agreement that included a release of her claims for, among other things, disability discrimination and whistleblower discrimination.

**53.**

Pursuant to ORS 659A.370(2), Gabriel never requested USGBC include in the Severance Agreement any nondisclosure provision, nondisparagement provision, or any other provision referenced in ORS 659A.370(1)(a).

**54.**

USGBC made an offer of settlement of Gabriel’s claims against USGBC, through the Severance Agreement, conditioned on Gabriel requesting and/or accepting nondisparagement and nondisclosure provisions described in ORS 659A.370(1)(a).

**55.**

As a result of USGBC’s violations of Oregon’s Workplace Fairness Act, Gabriel lost the value of the negotiated Severance Agreement and experienced emotional harm described above.



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

**56.**

In addition to damages, Gabriel is entitled to costs and attorney fees and statutory damages pursuant to ORS 20.107 and ORS 659A.885 as well as a civil penalty pursuant to ORS 659A.370(5).

**FOURTH CLAIM FOR RELIEF**

(disability discrimination, ORS 659A.112))

**57.**

Gabriel incorporates all preceding paragraphs.

**58.**

Gabriel is a person with a disability as defined by ORS 659A.104(1) in that she either has a mental impairment that substantially limits one or more major life activities including concentrating, communicating, focusing, and/or interacting with others, or USGBC regarded her as having a mental impairment and subjected her to disability-based discrimination as a result.

**59.**

Gabriel was qualified to perform the essential functions of her job with or without reasonable accommodation.

**60.**

USGBC discriminated against Gabriel based on actual or perceived disability, through actions including but not limited to:

- creating a hostile work environment for Gabriel because of assumptions about her actual or perceived disability, and/or harassing Gabriel because of her actual or perceived disability;
- subjecting Gabriel to stricter scrutiny than colleagues without an actual or perceived disability;



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

- penalizing Gabriel in one or more performance reviews for behavior evincing an actual or perceived disability;
- imposing work standards or metrics, such as a requirement to demonstrate emotional intelligence, that discriminate on the basis of disability; and
- terminating Gabriel because of a perceived disability.

**61.**

As a proximate cause of USGBC's disability discrimination, Gabriel suffered the damages described above.

**62.**

In addition to damages, pursuant to ORS 20.107 and ORS 659A.885, Gabriel is entitled to recover reasonable attorney fees, expert fees, and costs.

**JURY TRIAL DEMAND**

**63.**

Gabriel demands a trial by jury on all claims.

**PRESERVATION OF RIGHT TO AMEND TO ASSERT PUNITIVE DAMAGES**

**64.**

Gabriel preserves her right to amend this complaint to assert punitive damages.

**PRAYER**

Gabriel hereby prays to the Court for the following relief:

1. Economic and non-economic damages not to exceed $600,000;
2. If allowed by appropriate motion and amendment, punitive damages;
3. Amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages;



**FOX LAW LLC**
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

4. Reasonable costs and attorney fees, including as authorized by ORS 659A.885, ORS 20.107, and ORS 657B.070(2)(a);

5. Pre- and post-judgment interest as allowed by law; and

6. Equitable and all other relief as the Court deems necessary and appropriate.

DATED: July 31, 2026

**FOX LAW LLC**

By: */s/ Emily Teplin Fox*

Emily Teplin Fox, OSB No. 121720
emily@foxlawpdx.com
610 SW Alder St. Suite 910
Portland, OR 97205
(503) 676-3436

Attorney for Plaintiff__________